Okay, the next case on our docket is 514-0508, and it's People v. Gerardo Forest. I think I said that right. Okay, counsel. Mr. Harris? I hope that heavy side was not related to our argument, but... No, it was related to my... Court's murder law. I'm hoping I'm getting it right. Justice Welch is watching me. Before you get started, can we just establish, is the defendant's last name spelled with one R or two? Well, I'm spelling it with two, okay? I don't think he knows how to spell his name. And that's what, on appeal, that's what the Department of Corrections has, and so... I mean, I think in the trial court he was going with one R, now maybe it's a two-R alias, but... One R or two R has to be... And I do believe his first name is pronounced Gerardo. Say it again? Gerardo. Gerardo. Thank you very much for correcting that. I'm Assistant Defender Levi Harris on behalf of Mr. Forest, who's here appealing a second state dismissal of his post-conviction petition that's been in progress for 13 years at this point. Mr. Forest asked his court to remand his petition for an evidentiary hearing because he's made a substantial showing that because the trial court did not grant his request for special provisions in his 1997 trial, he was left unable to understand what was happening during this trial and his sentencing, and unable to communicate effectively with his attorney. This was due to... Go ahead, Your Honor. I was going to... I wanted to follow up. I made a comment that it probably didn't matter on the one R or two R, but I think I understand what Justice Barbera was getting at. Does the one R or two R establish in any way the fact of the defendant's low IQ, his inability to understand whether he really has one R or two? I mean... Oh, sure, Your Honor. I think... I was too quick to judge. I think I understand. I didn't mean to make a flip, but that was the point. Okay. I think so, too. Right. I apologize. I didn't mean... This court, as we've mentioned, has already reversed or remanded this case once, five years ago, when the court found that Mr. Forrest's mental retardation, his psychological illness, and his limited capacity excused him or excused his late filing. So it was dismissed then for lack of culpable negligence or for culpable negligence. This court said, no, he's not culpable for that. He didn't know what was going on. He had these cognitive deficits that prevented him from being able to do that. Mr. Harris, I need to ask you a question. What precedent exists in Illinois for appointment of a special aid like he's requesting? Your Honor, I... After a finding of fitness. I don't know about a precedent specifically for that, but that was just one of the special provisions that was recommended. I mean, there is, you know, in the findings, the possibility you can find fit, fit with special provisions, or unfit. And it's not clear to me in this case whether that fit with but only with special provisions was ever put to the jury. Even if it was, we believe it says it's wrong. But it seems to proceed. I mean, nobody says, well, Your Honor, I know that they found it fit without the special provisions, but can you give them anyway? That was not the thing. So I don't know why that was not weighed in on. But besides the fact that they wanted to appoint this woman who's unfortunately now deceased from what I can tell. Dr. Kenio said, look, you got to speak really slowly. You got to use tiny vocabulary. You need to stop every now and then and say, okay, Mr. Forrest, why don't you tell us what you understand has just taken place. And where's the precedent for that? I mean, we see a lot of defendants with low IQs. And you used to say that argument shouldn't be made for each and every one of them. Well, Your Honor, I'm not their attorney, and I don't write Dr. Kenio's evaluations for them. No, I'm just talking generally. I mean, should this court presume that what the Supreme Court has decided by rule, for example, on admonishments should be changed when someone has an IQ below a certain level? Or are we to presume that the Supreme Court has designed these so that they're understandable by people of low IQ? I think we're going to be having a lot less litigation about the 651C violations and things like that. But I think that's respectfully beyond the scope of the relief we're here asking for today. We're not asking for new rules. We're not asking for special provisions. In every case where someone's IQ is below a certain age, although I will say this is the lowest one that I've seen in my practice. I think the range went back and forth for about 10 points, but the average was about 56. So if I could, I want to talk about the law of this particular posture, the history of this error, the facts that support this substantial showing, and then what can happen at a third stage. Legally, it's not a complicated case. The review for this court, as you know, is de novo. All Mr. Forrest had to do was make a substantial showing of a constitutional violation. His factual assertions have to be taken as true at this point. And it's clear from the record, even though this court doesn't have to defer to the circuit court's findings, but it's clear from the record the court did not assume that my client's factual assertions were true. In fact, I think he assumed pretty much the opposite, or just ignored my client's pleading altogether and focused solely on what Dr. Cuneo was saying, which is important. But my client has a voice, too, even if that voice is somewhat murky. We know that a defendant is unfit to stand trial. And, Your Honor, you mentioned precedents for special provisions. I think the precedent is if a defendant is unfit to stand trial, you've got to get him fit, or you can't try a person who's unfit and doesn't understand what's going on to them, unable to assist in their defense. But your client was found fit. He was found fit, correct, and we believe that that was an incorrect finding. We also believe, regardless of that, nothing prevented the court from saying, yeah, they found him fit, but look, this doctor's evaluated him. And from the time he was, I think the first one was 9 years old, it was for social security disability. This doctor knows him probably professionally better than anybody. Let's go ahead and give this guy what he needs to make sure that he understands what's going on in this trial. You know, we have to assume from this pleading that he didn't understand what was going on in this trial. Why do we have to assume that? Because he stated it. Who said that? Mr. Forrest stated that. Your client? Correct. And at this stage we have to take that as true. But the record doesn't, I mean, we don't know if his lawyer, Mr. Dusick, who also unfortunately has passed away, had a relationship with him. In fact, the court said that it appeared that there was an adequate attorney-client exchange. We know that there wasn't because Mr. Dusick felt that this was a strong enough error to object about it before the trial and to put it in the post-trial motion, that, look, this guy should have gotten those special provisions. We know he did not feel comfortable communicating with his client. He wanted this honey maggio to come in and help him give effect to that six-year right. Unfortunately, I don't know, Mr. Dusick, I don't know how many clients of this intellectual capacity he had or how familiar he was with working with it. But he felt strongly enough that this was needed to ask for it and to put that as a constitutional error in his post-trial motion. There was a motion that the court took up and had a hearing on where the judge went through, I don't think you cited in your brief, but in the state's brief on page four, a whole blocked quote where the court very thoroughly examined whether or not it thought there was a need for this special assistance and clearly lays out its reasoning for why it didn't feel it was necessary. It is at the court's discretion as to whether or not to follow Dr. Cuneo's recommendation, is that correct? I think that that's correct, and I think that it's the court's discretion. I think that that is not specifically the judgment that's on review right now. What's on review is this post-conviction thing. So we're saying- No, and it's also not on review that the jury was wrong about the fitness. But that's part of his substantial showing, okay? What matters is not necessarily what the court found. What matters is not necessarily what the jury found. What matters is, is this client fit or not? He's saying, because this thing didn't happen, regardless of who made that decision, I didn't understand what the heck was going on in my trial. I was not able to assist in my defense. That's the substantial showing he has to make. And he has to show that the result-well, we're at the second stage here, aren't we? That's right. If he goes back to an evidentiary hearing, he can testify. The trial court can testify. The state's attorney who is still around can testify. We can get an expert. The state can bring in experts. And then if there's an evidentiary hearing and the court says, you know what? I don't qualify any of this. I think you're fine. Then he can pass-the circuit court can pass judgment on whether there was error in the court's discretion. We're not necessarily reviewing that court's discretion from 1997. What we're reviewing is this decision below on post-conviction proceedings. Is the quote that I referred to part of the record that the court has the opportunity to review in deciding the second stage? Absolutely. So then the court could have relied on that statement in determining whether or not it established a constitutional claim. Unfortunately, Your Honor, what we know is that the court affirmatively did not do that because the court stated in its decision that this hearing wasn't transcribed, which is just flatly false. That was one of the disagreements. I don't think counsel would say that. Which hearing was not transcribed? The one that you're talking about, about whether he needed special provisions. I see. Could you elaborate on that one more? Well, in terms of there obviously was a transcription because we have a copy, at least a portion of it, in the state's brief. And you're suggesting that the trial judge at the time of the second stage hearing said that there was not a transcription of that previous motion for special assistance. Correct. And based on that, that's why you're suggesting the court couldn't have reviewed that. Well, I think nobody prevented the court from doing that, but he did. He says in his decision, it's page 772 and 73 in the common law record, no transcripts of the hearing requesting special assistance are provided. Are provided. It didn't say existed. But we know he didn't review them.  That's correct, Your Honor. Do you want me to come back in a minute? No. Did your time run out? I'm sorry. We have a little bit of time. Okay. Oh, yes. You'll have an opportunity in a few minutes. I hope you don't. Let's let Ms. Gaston take a shot at us. We'll take a shot at her. Okay. So, what do you say about the fact that the court didn't look at this paragraph? Should I announce my presence first? I'm sorry. No, go ahead. I got ahead of myself. The court counseled Chelsea Gaston on behalf of the state going to paragraph 144, Your Honor. Yes. What's the significance of that? Your Honor, the significance is that it demonstrates the thought process of the trial court in deciding that outside special assistance was not, in fact, necessary in order to accommodate the cognitive abilities of the defendant in this case. But do you think that the court had the entire picture in front of it when it said that the information wasn't provided from the prior hearing? Your Honor, as you said, the language was that no transcripts were provided. I don't think that that means that they didn't have the information in front of them and they didn't only need that information from the record. It's demonstrated throughout the record all of the accommodations that were put in place, the awareness not just of defendant's trial counsel, but also the court and the state that they needed to consider his cognitive abilities in this case and ultimately I think what the court found in that we don't know what was said between defense counsel and his client. There are things that aren't going to be on the record. That's all true. So what we have to rely on demonstrates, and as we've said to you on our brief, there's multiple sites where the court did take the time to question the defendant. Who are you? Who am I? Who is your attorney? Who is the state? In questioning him, it was Dr. Cooney or Dr. Raven, I don't remember which one. Both are qualified individuals who examined the defendant in this case. They said he understood what murder was, he knew what he was on trial for, he knew what his possible sentences were, and so the ultimate question was, did he understand the nature and purpose of the proceedings against him and could he assist in his defense? And as the court pointed out, it's ultimately up to the trial court to determine if they're going to bring outside counsel in, and the court decided that it wasn't necessary to do that. Just because the doctor recommended bringing outside counsel, not outside counsel, outside assistance to trial, it's not a mandate on the court. The court ultimately gets to decide if it's necessary, and I think the trial court did a really good job of explaining its mindset and saying that it wasn't necessary. He also pointed out at sentencing, Your Honor, that he had a year and a half to observe the defendant and that I think the exact language was that his functional intelligent level or his street smarts go beyond his cognitive limitations that were outlined by Drs. Cuneo and Rabin, and that's volume 2, C-427, 26 to 27, Your Honor. So going back to the statement you just made, did Dr. – for my clarification, did Dr. Rabin actually interview this person or was his testimony based on reviewing the record of Dr. Cuneo? I thought that Mr. Rabin had not actually interviewed the client. I believe it's both, Your Honor. Both. I believe he both interviewed the defendant and then he also relied on Dr. Cuneo's notes when he testified at the fitness hearing. I think there was a reference to 90 minutes. Okay, if not, now that you say that, I do recall that. All right, I'm sorry. But I found it interesting that Dr. Cuneo did not testify at the fitness hearing. I believe the record, Your Honor, said he wasn't available. That's just— Did the records come in? Do you know if his records came in at the fitness hearing in any way? I don't remember, Your Honor. Okay, no, I'm just curious. But I believe he was unavailable. I think that's somewhere in the record. So you don't believe that the defendant is entitled to go forward with his claim? No, Your Honor. I believe that, in this case, the trial court got it correct. It's very easy in a post-conviction stage to forget that the final judgment has already been entered and it's the defendant's burden to show that he has somehow suffered a substantial deprivation of constitutional rights. And in this case, he just doesn't rise to that level in demonstrating that he was deprived of anything. His trial counsel was amazing. He was very effective. He was very careful with his client in advocating for him. The co-counsel said that Mr. Dusik had requested that outside counsel be brought, but he was going off with the recommendation of what Dr. Cuneo had said, and it's just effective advocacy for his client. But based on what the trial court had observed and what Mr. Dusik was able to communicate with his client about, he just didn't feel that it was necessary. And again, it's not just a question of what his IQ was. We don't deny that he suffers from a low IQ or nonspecified psychosis, but there is a difference between an IQ and his learning ability and what his street smarts were and his actions on the night of the murder. This court has seen this case several times. On its Rule 23 order, it specifically mentioned what he was wearing, how he had faxed in, and saw a shotgun to his body. I think even those facts also go to the ultimate determination that it wasn't necessary to bring outside counsel, that he was, in fact, able to assist in his own defense. And all of those actions on his part just further go to what the trial court ultimately found. Do you have any further questions, Your Honor? No. Thank you. Thank you very much for your argument. Mr. Harris? Yes, Your Honor, Your Honors, all honorable. I think the most significant fact to me that tells me that this fitness issue is not totally focused is Attorney Duesen asking for these special provisions despite the fact that he knew him. You know, the court had been observing him for a year and a half. The counsel had been dealing with him for that long as his client, and he told the court, any help I can get, now this doesn't have a credit, okay, but I think you can get the idea. Any help I may have in this case through the court's discretion in order to help allow him to represent himself. That's what he was seeking when he was seeking these special provisions. To me, that says, you know, nobody's saying this attorney was a bad attorney. He did the best job that he could with what he was given, which wasn't what my client needed. I want to talk about the judgment on page 4 of the state's brief. Again, that judgment is not what's on review here. It's the judgment of the circuit court below. Counsel said that, well, we just don't know what's in the record about what happened with Mr. Duesen and my client, you know, off the record at counsel's table or what might have happened behind the scenes. That's not on the record, and we can't just presume that. No, we can't presume that, but we can't presume that it was there either. It's Mr. Forrest's statements that these things didn't take place, that he didn't have what he needed is unrebutted by the record. Now, if we get to an evidentiary hearing, we flesh all this out, there are credibility determinations. That's fine. At this stage, we have to take that as true. Why do you say that this court cannot review the context of what Justice Barberis referred to on page 4? We can look at anything. I think you can look at it. This is to have a review. I think that is absolutely correct, and that's all part of considering what's in the record. Why do you say we can't? No, that's not the judgment that's on review here. That's not the way we're seeing it. As to what's on review, we can take that into account. Correct. Great. Okay. But we're not specifically here, you know, this is not the posture of a direct appeal, which, by the way, it would have been had counsel not been in effect. But in a direct appeal, we would be up here saying that that specific language was the error. Okay? What we're saying here is the error is broader than that. It encompasses that. It encompasses the jury's finding. But the error, the big no-no, is that my client was put through a trial and a sentencing procedure that he did not understand. You know, the questions, I don't mean to be glib, but the questions, who are you, who am I, remind me of Pontius Pilate saying what is truth. I mean, these are pretty global questions that don't really get at, Mr. Forrest, can you tell me what's going on in this situation for you right now? Can you say this back in your own words? Do you feel comfortable proceeding with what we're going on with here? To get at your question, Justice Barbaros, Dr. Rayburn did interview my client 90 minutes one time. Dr. Cuneo interviewed him six times over a total of 19 years and has had the same conclusion throughout. Obviously, in 1984, when my client was a child, he didn't – he wasn't, thankfully, talking about what he needed in a murder trial. But his assessment of his cognitive function and all that has been consistent throughout. It's probably the most unfortunate thing that's ever happened to almost any of my defendants that Dr. Cuneo was not available to testify at that fitness hearing in 1997. That has really confounded me that you have a doctor who, as you say, has been evaluating him and then at the most crucial point in the proceeding, he's not called. And I can't imagine why that didn't happen. I mean, was there a continuance? Why would you go forward with that under those circumstances? Your Honor, I don't know, and the person who would know that specific question is not around to tell us. Although Dr. Cuneo may have some recollection of that in the third safety evidentiary hearing. Well, Dr. Cuneo did testify in the motion to suppress, and in fact, the defendant's confession got suppressed. Correct. There was a question, I believe, from you, Justice Gates, whether Dr. Cuneo's records and notes came in at the fitness hearing. The answer to that is no. Dr. Rabin reviewed those notes in his testimony. He was asked, well, do you agree with Dr. Cuneo's assessments, et cetera, et cetera. Not specifically about this question where I hear it, but those records themselves did not come in. Okay. I got to stop you there. Okay. But thank you very much for your comments, Mr. Harris and Ms. Kasten. This matter will be taken under advisement and will issue an orderly report. Thank you very much. Thank you very much.